## MICHAEL DONAHUE
## v.
## ELIZABETH DONAHUE.

DIVORCE—BURDEN OF PROOF.—In a case of divorce where the claim is that the first marriage was avoided within the age of consent, or that a divorce was procured, the burden of proof is upon the party relying upon the avoidance or divorce.

APPEAL from the Circuit Court of Kendall county; the Hon. C. W. UPTON, Judge, presiding. Opinion filed December 4, 1885.

Mr. A. J. HOPKINS, Mr. N. J. ALDRICH and Mr. F. H. THATCHER, for appellant; cited Hood v. State, 56 Ind. 263; People v. Dawell, 25 Mich. 248; Litowich v. Litowich, 19 Kansas, 451; Gettys v. Gettys, 3 La. 260; Commonwealth v. Boyer, 7 Allen, 306.

Messrs. Snow & Stead and Messrs. Fowler Bros., for appellee; cited Rex v. Truyning, 2 B. & Al. 385; Best on Evidence, § 334; Wharton on Evidence, § 1297; Sharp v. Johnson, 22 Ark. 79; Lockhart v. White, 18 Texas, 102; West v. State, 1 Wis. 209; Greensboro v. Underhill, 12 Vt. 604.

Baker, J. Elizabeth V. Donahue, appellee, exhibited her bill against Michael Donahue, appellant, in the Circuit Court of Kendall county, for a divorce, on the ground of extreme and repeated cruelty. He answered, denying the cruelty charged, and also alleging that at the time of the ceremony of marriage between them, he supposed she was the widow of one Eric Simpson, but had since learned said Simpson is still living, and averring that the supposed marriage between appellee and himself was null and void.

At a subsequent term he filed a cross-bill, charging the fact of the prior marriage with Eric Simpson, and that he was still living, and that such marriage had never been dissolved or annulled ; and praying that the marriage with him, appellant, be decreed null and void. An answer was interposed to this cross-bill, to the effect that in 1876, and before the intermarriage of appellant and appellee, a decree of divorce was entered, upon bill duly filed, dissolving the marriage between appellee and said Simpson, which decree it was averred, was regular, legal and in full force. Issues were formed upon the bill and cross-bill, and submitted to a jury, and the verdict returned was that appellant was guilty of extreme and repeated cruelty as charged in the original bill, and that appellee was not a married woman at the time of her marriage with appellant. A final decree was rendered, granting appellee a divorce, solicitor's fees and alimony.

The evidence sufficiently shows the charge of extreme and repeated cruelty to be true.

It is admitted that the Utah divorce, purporting to decree a dissolution of the marriage relation between appellee and Eric Simpson, a certified copy of the record of which is in evidence, was an absolute nullity.

But, it is suggested, two presumptions arise out of the case ;

a. presumption of the continuance of life, and that Eric Simpson was at the time of the subsequent marriage, and still is alive; and, secondly, a presumption of innocence, that appellee was not guilty of bigamy, and, consequently, of the legality of the last marriage; and it is urged that the presumption of innocence is the stronger of the two and must prevail over that of the continuance of life. The subject of these presumptions was under consideration in this court in Harris v. Harris, 8 Bradwell, 57. The doctrine there held, would seem, however, not to have application to the case in hand. The question of the competing presumptions of life and of innocence and of their relative force, is not involved in the issues formed in this cause, and submitted to the jury by the instructions of the court.

The defense interposed by appellee to the cross-bill, is that she was divorced from her first husband, and not that he was dead at the time the second marriage was contracted. There not only was no testimony introduced to prove his decease, but there was positive testimony of one witness that he was alive long subsequent to the second nuptials.

This controversy appears to have been heard and determined in the trial court upon a different theory from that now agreed in the brief of appellee. The holding of that court was, that the presumption of innocence and of the legality of the later marriage obtains where the contention is that the first marriage has been dissolved by a divorce, and casts the burden of proof upon the party alleging the continuance of the first marriage, to affirmatively show it has not been annulled. The court expressly instructed the jury that the burden of proof was upon appellant to show by a preponderance of evidence that the former marriage contract had not been dissolved at the date of the second wedding; and gave a further instruction, that the law presumes, *prima facie*, that the marriage with Simpson had, at the date mentioned, been legally dissolved. The instructions on this branch of the case were erroneous, and misled the jury. The point decided in Harris v. Harris, *supra*, was that the presumption of innocence and of the legality of the second marriage overcomes the presump-

tion of the continuance of life, and that the burden of proof is on the party alleging the invalidity of the second marriage. The doctrine of that case is based on the decision in Rex v. Twining, 2 B. & Al. 385, and numerous decisions thereafter made. But, the same presumption does not prevail where the claim is that the first marriage was avoided within the age of consent, or that a divorce was procured; in such latter cases the burden of proof is upon the party relying upon the avoidance or divorce. McDeed v. McDeed, 67 Ill. 546 ; Commonwealth v. Boyer, 7 Allen, 306; People v. Dawell, 25 Mich. 248. When a person is shown to have done an act which was un_ lawful, unless distinctly authorized to do it, and the subject-mat_ ter constituting the authority is peculiarly within the knowledge of such person, then the burden of proof is imposed upon him or her. In the case at bar, the fact of a decree of divorce annul- ling the bonds of matrimony between herself and Simpson, and information respecting the state and form in which it was pro- cured, are peculiarly wi hin the knowledge of appellee. It may be added, the circumstances of the void Utah divorce would seem to lead to the inference that no other divorce had been obtained, and that appellee, in contracting a second mar- riage, acted upon the faith of the validity of that decree. The case presented by this record stands upon a different footing from the Harris case, where the question turned upon the con- tinuance in life of a husband who had disappeared years before, and of whose death or continued existence, there could be no le- gal presumption, the abandoned wife had peculiar cognizance.

In the view we take of the law, not only were the instruc- tions indicated, erroneous ; but the verdict was against the law and the evidence, and the motion for a new trial should have prevailed.

The decree is reversed and the cause remanded.

Reversed and remanded.